.20935.  DUGAS CORPORATION *v.* GEORGIA POWER COMPANY.

DECIDED JULY 14, 1931.

*W. S. Gaillard,* for plaintiff in error.

*B. P. Gaillard Jr., Edgar B. Dunlap,* contra.

LUKE, J.  On August 15, 1929, Georgia Power Company brought a bail-trover action against Dugas Corporation to recover "a certain one hundred horse-power Fairbanks-Morse Diesel engine direct connected to a 75 KW, 2300 volts, three phase, 60 cycle generator with exciter and all accessories, of the value of $3,000 or other large sum."  The trial resulted in a money verdict and judgment for the plaintiff, and the exception here is to the overruling of the defendant's motion for a new trial.

The petition substantially alleges:  1.  Defendant is a corporation having its principal office, an agent and place of business in Lumpkin County, Ga.  2.  Possession of the property in the defendant.  3.  Title to the property in petitioner.  4.  "The yearly value for the use of said property is $300 or other large sum."  5.  "Petitioner has demanded and the defendant has refused to deliver to petitioner said property, or to pay petitioner the profits thereof."

The original answer to the petition is substantially as follows:

1. "Paragraph 1 is admitted." 2. "Paragraph 2 is denied as stated as hereinafter qualified." 3. "Paragraph 3 is a matter of law, and defendant is advised that it is not necessary for him to answer same, but maintains he is entitled to hold possession of said property." 4. Denies paragraph 4. 5. "Admits paragraph 5 and says that there are no profits to pay plaintiff." 6. "Answering further, defendant says that plaintiff palmed off said property on defendant through fraud, misrepresentation, and deceit of its agents, and that defendant should be relieved of any further liability on said contract."

The original answer was amended substantially as follows: 1. "Defendant holds property involved . . under lease with privilege of buying same within three years after date of contract." 2. "Defendant's time of lease not having expired, plaintiff can not hold him liable for conversion for holding possession under bond, nor take money judgment or judgment for damages. Plaintiff's action is premature and should abate." 3. "Defendant says that the agents of plaintiff who palmed off the engine on defendant were C. S. Hammond and Charles A. Collier. Said plaintiff's agents represented that said engine was merchantable and would perform efficiently the work for which it was made. Relying on said statements, and as a result, defendant was induced to take said property, and was thereby damaged in the amount of $800." 4. "Plaintiff is not entitled to elect money or damage judgment because not first offering before said election or tendering to defendant said contract under which defendant became possessed of said engine, nor offered to rescind." At the close of the evidence, the defendant further amended its answer by pleading total failure of consideration.

Plaintiff introduced in evidence the written agreement between Georgia Power Company, party of the first part, and Dugas Corporation, party of the second part. This agreement, executed in duplicate on December 23, 1927, recited that the party of the first part "has this day leased to party of the second part for use in its plant at Dahlonega the property sued for, now installed in the plant of the party of the first part at Metter, Ga., upon the following terms, rental, and conditions, to wit." We now state the substance of the parts of the contract material to the questions involved: 1. Party of second part accepts delivery of said prop-

erty "as it stands in the plant of the party of the first part at Metter, Georgia," and "will bear all expenses in connection with the dismantling and removal thereof at the plant of the party of the second part. 2. "The period for which this lease is made is three years from the date of delivery at the present location." 3. "Party of second part agrees . . to pay . . a rental charge of $25 per month, in advance, beginning twenty days from the date of delivery of the engine at its present location is made, for the period of the lease, provided that party of the first part shall have the right and option to cancel this lease upon giving the party of the second part ninety days notice in writing of its readiness to serve the power requirements of party of second part, under the standard schedule of rates of the party of the first part, from its electric transmission lines." 4. "If . . , if at the expiration of the three-year period herein fixed, party of the first part is not able or in a position to serve party of the second part with its electrical transmission lines, . . party of second part agrees . . to purchase . . said engine, generator, and equipment . . and pay therefor the sum of $3,000." 5. While said machinery is used under this agreement, party of second part is "to make all necessary repairs thereto and maintain the same in good order and condition, at its own expense." If said machinery becomes incapable of use from any cause other than fire, party of the second part "will assume full responsibility therefor, and will, within ninety days after such happening, pay . . the sum of $3,000 in cash, in compensation therefor." 6. "Should party of the second part make default in the payment of the monthly rental, . . party of the first part shall have the. option to cancel this agreement and repossess itself of said engine, generator and equipment." 7. "Delivery of the engine, generator, and equipment shall be made . . when electric transmission lines . . are extended into or reach . . Metter, Georgia, and said engine and equipment are released from service there, which it is estimated by the party of the first part will be on or before December 24, 1927."

C. S. Hammond, sworn for the plaintiff, testified in substance that as an employee of the plaintiff company he was instrumental in having said contract drawn up, and that at that time he told Mr. Dugas that he, witness, had never seen the engine, and that he

would prefer that he go to Metter and inspect the engine before signing the contract; that Dugas said that he had heard all about the engine, and that it was all right, and that he was ready to sign the lease, and he did sign it; that when the contract was signed the engine "was furnishing electricity" for Metter, Ga.; that "we explained to him [Dugas] that we had no knowledge of its condition except that it was now running and giving satisfactory service" at Metter; that Georgia Power Company allowed Dugas Corporation $100 to compensate it for the loss of time in getting the machinery moved and installed, but never allowed anything for repairs, and that when the contract was executed, "the amount of $3,000 was agreed on as the value of the engine."

Mr. McDonald, sworn for the plaintiff, testified substantially as follows: "I am an employee of the company at Metter, Ga., and was with Mr. Dugas when he inspected this engine there. At the time . . it was operating and pulling the entire load of the town of Metter, and had been pulling and lighting the entire town. It had been running in Metter for months before he took it, and stayed in operating condition. . . Mr. Dugas came and inspected the engine himself, and was thoroughly satisfied with it, and made arrangements for a man to load the equipment. I saw the engine last time when it was dismantled and on the freight-car to be shipped to Mr. Dugas, and at that time and the time he inspected it it was worth $3500 at least." W. B. Harris, sworn for the plaintiff, testified: that he was assistant treasurer of the Georgia Power Company; that Dugas Corporation had only paid Georgia Power Company $75 during the entire time it had said machinery, and that the last payment of $25 was made July 2, 1928; that after Dugas Corporation defaulted in its payments for rentals, witness made demand upon it for the property, and this demand was refused; that said demand was made in May, 1929, before suit was brought; and that G. C. Dugas told us that we would never get the engine." Graham Dugas, sworn for the defendant, testified: that he was president of the Dugas Corporation and negotiated with the power company through its representative, Mr. Hammond, for the purchase of said machinery; that the engine was not serviceable until Dugas Corporation had spent about $900 on it—that not till then could it be used for the purposes intended, and that even then it would run only inter-

mittently; that witness "moved the engine up here by railroad," and had it installed in his plant under the direction of a man from the Fairbanks-Morse Company; that witness signed said contract with full knowledge of its contents; that demand had been made upon witness by Georgia Power Company for the engine, and witness had made demand upon said company for a credit for repairs on the engine; that witness could have inspected the engine, but "took their word for it that it was all right;" and that witness went to Metter to load the machinery. Frank Whitmire, sworn for the defendant, testified that he had been working for defendant ever since the engine had been installed; that he did not remember that it ever ran continuously for four hours; that it would take two or three hours every morning to start it; that Mr. Dugas was constantly buying new parts for it; that he did not consider that the engine was worth anything to Mr. Dugas; that the engine was broken when it reached destination, but that he did not know whether or not it was broken in transit. Mr. Dugas, recalled for the defendant, testified that electrical experts worked on said machinery, and that "this engine never did the work it was supposed to do." This witness further swore that the reason he paid rent for three months after he received the machinery and prior to the time he got the engine to running was that he "felt that the power company would make some adjustment for the parts and money expended on this engine."

There being evidence in this case to show: (1) title to the property in the plaintiff; (2) a conversion by the defendant; and (3) the value of the property, the case was made out so far as the general grounds of the motion for a new trial are concerned, unless there be merit in some one or more of the defenses interposed by the defendant. See *Pryor* v. *Brady,* 115 *Ga.* 848, 850 (42 S. E. 222); *Hudson* v. *Gunn,* 20 *Ga. App.* 95 (1 *b*) (92 S. E. 546). In the first place, in our opinion, the jury were clearly warranted in finding against the plea of fraud. In the second place, we are of the opinion that the jury were warranted in finding that the defendant had defaulted in the payment of the rentals stipulated for in the contract. Therefore we hold that the action was not prematurely brought. Neither do we think that there is merit in the contention (see paragraph 4 of the first amendment to the answer) that the plaintiff was not entitled to elect to take a money judg-

ment for the reason that it did not first offer to deliver up said contract to the defendant. The contract was in duplicate, was introduced in evidence upon the trial of the case, and is now a part of the record here. In our opinion, the defendant incurred no further risk of liability by reason of the fact that the contract was not delivered up to it. The question presented is controlled adversely to the contention of plaintiff in error by the decision in *Securities Trust Co.* v. *Marshall,* 30 *Ga. App.* 379 (7) (118 S. E. 478), and cit. We are also of the opinion that the jury were warranted in finding against the plea of failure of consideration.

The first special ground of the motion for a new trial is this: "Because, during the argument of the case by the plaintiff's counsel in conclusion, the defendant's attorney tendered back to plaintiff the property involved in this case for the purpose of mitigating the damages, and plaintiff refused the tender, and the verdict for damages is excessive." We think the tender was too late, and hold that this ground is without merit. See, in this connection, Civil Code (1910), § 4494, which has reference to tender.

The gist of the second special ground is that the court erred in charging the jury that if the value of the property in question was expressed in a contract between the parties, that would prima facie be the value of the property. The charge gave the jury a rule of law that has been thoroughly accredited by the appellate courts of this State. See *Securities Trust Co.* v. *Marshall,* supra.

The evidence supports the verdict, except as herein indicated. Plaintiff elected to take a damage verdict for the value of the property, with interest thereon. The jury rendered the following verdict: "We, the jury, find a verdict for plaintiff in the sum of $2,000 principal, with interest of $128.26." The court entered a judgment thereon for the lump sum of $2,128.26, with costs of court. Under numerous decisions of the appellate courts of this State, the verdict should have been for a lump sum, and not for "principal" and interest separately. Therefore, under the decision of *Drury* v. *Holmes,* 145 *Ga.* 558, "it is adjudged that the verdict and judgment be set aside and a new trial be granted, unless within twenty days after the remittitur from this court shall be made the judgment of the court below the plaintiff shall write off from the verdict the amount allowed as interest. Should the plain-

tiff in the court below write off the interest, the judgment is affirmed."

*Judgment reversed, with direction. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*